# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

WESLEY L. ADKINS,

    **Plaintiff,**

v.

                              Case No. 15-CV-3215-JAR-KGG

MARSHALL MANNING,

    **Defendant.**

## MEMORANDUM AND ORDER

This matter comes before the Court on Plaintiff's Motion for Default Judgment (Doc. 26). On September 19, 2018, the Court granted Plaintiff's motion in part on the issue of liability, but found that it did not have sufficient evidence before it to issue a default judgment against Defendant for the compensatory damages requested.[1] Accordingly, the Court held an evidentiary hearing on November 19, 2018 on the issue of damages.[2] For the reasons explained in detail below, the Court now awards Plaintiff the full relief sought—$250,000 in compensatory damages.

## I.    Procedural Background

Plaintiff Wesley L. Adkins filed this civil rights action under 42 U.S.C. § 1983, alleging that Defendant Marshall Manning used excessive force against him in violation of his Eighth Amendment rights.[3] Defendant failed to answer or otherwise defend against Plaintiff's action as required by the Federal Rules of Civil Procedure. Accordingly, on November 17, 2018, the clerk

---

[1] Doc. 36.

[2] Doc. 39.

[3] Plaintiff's claim against Defendant Merritt, Nickels, VanHoose, and Cline challenging the denial of his request for protective housing was dismissed for failure to state a claim. Doc. 9.

executed an entry of default against Defendant pursuant to Fed. R. Civ. P. 55(a).[4] The Court took Plaintiff's Motion for Default Judgment under advisement and noted that it would set a hearing to determine damages.[5] The Court then conditionally granted Plaintiff's request to submit affidavits on the issue of damages in lieu of presenting evidence at a hearing, reserving the right to set the matter for an evidentiary hearing if it deemed the affidavits insufficient to determine the issues raised in Plaintiff's motion.[6]

On September 10, 2018, Plaintiff filed a Supplemental Memorandum in support of his motion for default judgment, along with a supporting affidavit describing the incident with Defendant Manning and Plaintiff's resulting injuries.[7] On September 19, 2018, the Court issued its Order on Plaintiff's Motion for Default Judgment, granting default judgment against Defendant Manning on the liability issue of Plaintiff's § 1983 claim, but requiring an evidentiary hearing to determine the amount of compensatory damages Plaintiff is entitled to as a result of his claim.[8] The Court held an evidentiary hearing regarding the amount of damages on November 19, 2018.[9]

## II. Standard

Following entry of default, Fed. R. Civ. P. 55(b)(2) allows the court to enter default judgment. Once default is entered, the defendant is not entitled to defend itself on the merits.[10] Rather, the court must determine whether the plaintiff's allegations—taken as true—state a claim

---

[4] Doc. 28.

[5] Doc. 29.

[6] Doc. 34.

[7] Doc. 35.

[8] Doc. 36.

[9] Doc. 39.

[10] *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 n.11 (10th Cir. 2003) (citing *Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002)) (other citations omitted), *cert. denied*, 540 U.S. 1089 (2003).

against the defendant.[11] If the court finds that there is a sufficient basis in the pleadings for default judgment, that judgment only establishes liability; it does not establish the amount of damages.[12] The factual allegations in the complaint relating to the amount of damages are not taken as true.[13] Rather, "'[d]amages may be awarded only if the record adequately reflects the basis for [the] award via a hearing or a demonstration by detailed affidavits establishing the necessary facts.'"[14] However, where the damages claimed are capable of mathematical calculation, Rule 55(b)(2) "does not require that the district court receive evidence on the claimed damages amount before entering default judgment; rather, the Rule simply allows the district court to conduct a hearing if it believes that additional investigation or evidence is necessary."[15] Here, the damages claimed were not capable of mathematical calculation and the affidavit submitted did not establish the necessary facts to award damages.[16] Thus, the Court held a hearing on the issue of awarding damages.

---

[11] *See, e.g.*, *Kalinich v. Grindlay*, No. 14-1120-SAC, 2014 WL 3740439, at *1 (D. Kan. July 30, 2014) (quoting *Olivas v. Bentwood Place Apartments, LLC*, No. 09-4035-JAR, 2010 WL 2952393, at *4 (D. Kan. July 26, 2010)) ("Even after default, it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment since a part in default does not admit conclusions of law."); *Trang v. Bean*, 600 F. App'x 191, 193–94 (5th Cir. 2015).

[12] *See, e.g.*, *Hermeris, Inc. v. McBrien*, No. 10-2483-JAR, 2012 WL 1091581, at *1 (D. Kan. Mar. 30, 2012); *DeMarsh v. Tornado Innovations, L.P.*, No. 08-2588-JWL, 2009 WL 3720180, at *2 (D. Kan. Nov. 4, 2009).

[13] *See, e.g.*, *Kalinich*, 2014 WL 3740439, at *1 (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990); *Beck v. Atl. Contracting Co.*, 157 F.R.D. 61, 64 (D. Kan. 1994) (citation omitted), *superseded by statute on other grounds as recognized by Cessna Fin. Corp. v. VYWB, LLC*, 982 F. Supp. 2d 1226, 1233 (D. Kan. 2013).

[14] *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1275 (D. Kan. 2016) (quoting *DeMarsh*, 2009 WL 3720180, at *2).

[15] *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1172 (10th Cir. 2011) (citing Fed. R. Civ. P. 55(b)(2); *Finkel v. Romanowicz*, 577 F.3d 79, 87 (2d Cir. 2009)).

[16] Doc. 36.

**III. Findings of Fact**

The Court finds that Plaintiff is entitled to damages under 42 U.S.C. § 1983, based on the facts taken from Plaintiff's Complaint,[17] the Affidavit of Wesley L. Adkins,[18] and the testimony and evidence presented at the November 19 hearing. Plaintiff testified at the hearing. Defendant did not appear personally or by representative at the hearing, and thus presented no witnesses or evidence on his behalf and did not cross-examine Plaintiff. The Court found Plaintiff's testimony credible and incorporates his testimony into the factual findings below.

Plaintiff was housed at the Hutchinson Correctional Facility from approximately July 2010 through March 2017, and is currently incarcerated at the El Dorado Correctional Facility. Defendant was a Correctional Officer at the Hutchinson Correctional Facility until January 12, 2016, when his employment was terminated. On March 27, 2015, Defendant assaulted Plaintiff after a disagreement over whether Plaintiff had permission to take a shower.

Although inmates at the Hutchinson Correctional Facility were generally permitted to take daily showers, because Plaintiff was at the time housed in segregation, he could only shower if he was signed up on the shower list. On March 27, 2015, Plaintiff went to the yard in the morning to exercise, which qualified him for a mandatory shower following his yard time. During his time in the yard, Plaintiff informed the officer on duty that he needed to use the restroom, so the officer instructed Plaintiff that he would be placed on the afternoon shower list.

Defendant worked the 2:00-10:00 p.m. shift on March 27. When Defendant went to the cells to gather the inmates on the afternoon shower list, Plaintiff informed him that he was assigned to the afternoon list. Without explanation, Defendant responded that Plaintiff was not

---

[17] Docs. 1, 2, and 2-1.
[18] Doc. 35-1.

on the list, and refused to listen to Plaintiff's attempts to clarify the situation. Plaintiff subsequently informed Correctional Officer Logan Vibbert that he was on the shower list, and Officer Vibbert allowed Plaintiff to take a shower.

Officer Vibbert handcuffed Plaintiff, as was typical, to lead him to the shower. Upon entering the shower, Plaintiff encountered Defendant and they exchanged words. Defendant was argumentative and irritated that Plaintiff received the opportunity to shower. Plaintiff responded by telling him that Officer Vibbert did the right thing. Officer Vibbert unhandcuffed Plaintiff to take his shower. After taking his shower, Plaintiff dried off, was handcuffed, and attached to a chain lead held by Officer Vibbert, who escorted him back to his cell. Except for his underwear and a towel, Plaintiff was naked during the walk back to his cell, located in the upper level of the A3 cell block.

While being escorted to his cell by Officer Vibbert, Defendant, who was a large man and known as an MMA fighter, assaulted Plaintiff. Plaintiff did not initiate physical contact with Defendant, but did say something to him in passing. As seen in security footage,[19] Defendant responded to Plaintiff's exchange by punching Plaintiff in the face. Defendant then pushed Plaintiff to the concrete floor, continued to hit him, spit on him, and placed him in a chokehold. Defendant placed his foot on the railing as leverage to hold Plaintiff to the ground while choking him. While in the chokehold, Plaintiff attempted to voice to Officer Vibbert that Defendant was choking him intentionally. Despite Officer Vibbert's direct orders, Defendant did not stop choking Plaintiff until two other officers came running up to the upper level of the cell block, ordering him to stop.

---

[19] Hrg. Ex. 1.

5

Although the duration of the incident was short, Plaintiff experienced both physical and mental injuries from Defendant's assault. Physically, Plaintiff suffered from, and sought medical treatment for, abrasions on his face and lip and an ankle injury. Photos of Plaintiff taken shortly after the incident depict a thick stream of blood down the side of his face and ear, and a busted lip.[20] Initially, the infirmary provided Plaintiff with pain killers. Plaintiff's ankle remained swollen for two days following the incident, however, leading Plaintiff to believe that he fractured his ankle. After Plaintiff sought additional medical treatment for his ankle, the prison nurse ordered x-rays of the ankle; however, prison staff denied the x-ray request. Today, Plaintiff still suffers pain from his ankle injury.

Plaintiff's mental injuries stem from the fear, anguish, and anxiety caused by Defendant's assault. Plaintiff filed a grievance against Defendant for excessive use of force. Subsequently, Plaintiff was charged with insubordination and battery in a disciplinary report filed by Defendant on March 30, 2015. Plaintiff believes Defendant falsified statements in order to convict Plaintiff of the charges.

Although on April 27, 2015 he was ultimately acquitted of the charges, Plaintiff spent significant time after his acquittal in a different holding cell—a "slam cell" or MRA cell, also known as a "more restricted area" cell. The MRA cell is behind a solid door and more isolated than segregation cells. Plaintiff compared the MRA cell to solitary confinement—the cell was dark, he could not interact with anyone other than when approached by staff, and there was no "voicebox" so Plaintiff could not hear staff and staff could not hear him. The cell also contained a toilet, but Plaintiff was not allowed to flush the toilet himself, which resulted a foul odor in his

---

[20] Hrg. Exs. 2 and 3.

cell. During the nine and a half months that Plaintiff was in segregation, Plaintiff spent several of these months in the MRA cell.

Plaintiff remained housed in segregation and the MRA cell for nine and a half months because, as a result of the altercation, he did not want to return to general population without being protected from Defendant. Out of fear for his life, safety, and well-being, Plaintiff filed numerous emergency grievances requesting protective custody from Defendant, or in the alternative, a transfer to a different correctional facility. Those requests were denied, and Plaintiff was ordered to return to general population. Plaintiff anticipated that Defendant would lash out at him for filing grievances against him. During the time he refused to return to general population out of fear, Plaintiff remained housed in segregation and received additional stays in the MRA cell.

While housed in segregation, Plaintiff received mental health services at least once a week to address his apprehension and fear of Defendant. According to Plaintiff, being housed in the MRA cell was depressing, stressful, and confusing because he had not done anything wrong. Plaintiff ultimately chose to go on a hunger strike while in the MRA cell. Plaintiff talked with mental health services the day he went on the hunger strike, and later that day, Defendant was fired. Subsequently, Plaintiff moved to general population and was ultimately transferred to the El Dorado Correctional Facility. Plaintiff, who was visibly shaken at the hearing when describing the incident with Defendant, continues to suffer from emotional problems caused by the altercation.

**IV.   Discussion**

As the issue of liability has already been decided,[21] the Court must now determine the appropriate award of damages to compensate for Plaintiff's injuries.  "'[T]he basic purpose' of § 1983 damages is 'to compensate persons for injuries that are caused by the deprivation of constitutional rights.'"[22]  The amount of damages for a § 1983 constitutional violation "is typically determined according to principles derived from the common law of torts."[23]  "To that end, compensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as 'impairment of reputation . . . , personal humiliation, and mental anguish and suffering.'"[24]  A § 1983 plaintiff must show proof of actual injury to recover damages, and the damages awarded "must be proportional to the actual injury incurred."[25]

Plaintiff seeks $250,000 in compensatory damages for pain and suffering resulting from Defendant's use of excessive force.  In cases involving excessive force claims, the amount of compensatory damages varies widely, based on individual facts and the type and length of the plaintiff's injuries.[26]  While no out-of-pocket or monetary damages resulted from Defendant's

---

[21] Doc. 36.

[22] *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (quoting *Carey v. Piphus*, 435 U.S. 247, 254 (1978)).

[23] *Id.* (citations omitted).

[24] *Id.* (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974)); *see also Jolivet v. Deland*, 966 F.2d 573, 576 (10th Cir. 1992) (explaining compensatory damages may include damages for mental and emotional distress).

[25] *Jolivet*, 966 F.2d at 576 (quoting *Piver v. Pender Cty. Bd. of Educ.*, 835 F.2d 1076, 1082 (4th Cir. 1987)).

[26] *See e.g.*, *Hendrickson v. Cooper*, 589 F.3d 887 (7th Cir. 2009) (upholding a jury award of $75,000 compensatory damages and $125,000 punitive damages in an excessive force claim brought against a corrections officer who threw the plaintiff against a wall, slammed him onto the concrete floor which caused severe pain all over the plaintiff's body); *Jackson v. Austin*, 241 F. Supp. 2d 1313, 1323 (D. Kan. 2003) (awarding $15,000 in compensatory damages where an officer grabbed the plaintiff's bad leg and dragged the plaintiff fifty yards, resulting in a contusion, swollen wrists and knees, and lasting knee and shoulder pain); *Keith v. Koerner*, No. 11-cv-2281-DDC-JPO, 2016 WL 4541447, at *1, *7–8 (D. Kan. Aug. 30, 2016) (awarding $750,000 in actual damages in an Eighth Amendment case where an officer raped and impregnated a prisoner and the plaintiff testified as to her depression and mental distress resulting from the incident); *Meyer v. Nava*, No. 04-4099-RDR, 2007 WL 3046583, at *1 (D. Kan. Oct. 17, 2007) (awarding plaintiff $750,000 for emotional and mental distress damages in a § 1983

use of excessive force, Plaintiff's testimony and evidence support his request for $250,000 in compensatory damages for his pain and suffering. The evidence shows that Plaintiff not only suffered from, and continues to suffer from physical injuries, but additionally continues to suffer from humiliation, anguish, and anxiety because of Defendant's conduct.

Plaintiff offered sufficient evidence of his physical injuries caused by Defendant. The photos admitted into evidence depict Plaintiff's busted, swollen lip and a thick trail of blood running across his left cheek and ear. Plaintiff additionally testified that he suffered from an ankle injury that still bothers him today. Although he did not present documentary evidence of his ankle injury, Plaintiff explained that the nurse ordered x-ray imaging of his ankle because it was still swollen two days after the incident, but that the staff denied this request. Furthermore, the video evidence admitted at the hearing demonstrates Defendant's gross exertion of force and power over Plaintiff, who was vulnerable not only because of his status as a prisoner, but also because at the time he was handcuffed and tethered to Officer Vibbert and had no way of removing himself from the situation.

In addition to his physical injuries, Plaintiff suffered and continues to suffer emotionally because of Defendant's assault. After being intentionally and relentlessly choked, Plaintiff had a justifiable fear for his life, safety, and well-being because he believed that Defendant would do something to further harm him and did not know the extent of what Defendant was capable of doing. Plaintiff testified that after the assault he became so fearful of Defendant that he did not want to be transferred from segregation into general population, even though this resulted in him

---

case against a prison employee who raped, sodomized, and sexually battered the plaintiff while she was incarcerated); *Jones v. Courtney*, No. 04-3255-JWL-DJW, 2007 WL 2893587 (D. Kan. Sept. 28, 2007) (awarding $20,000 in compensatory damages for approximately two and a half months of pain and suffering where officer placed the plaintiff in a headlock, pushed him to the floor, prevented him from breathing and the nurse found that the plaintiff suffered from a swollen hand, collarbone and knot in his finger, and declining to award damages for emotional distress because the plaintiff did not request or put on testimony to prove these).

spending a total of several months in the MRA cell, much more restrictive than the regular segregation cells. Plaintiff did not understand why he was in the MRA cell, but he believed all the correctional officers were biased against him because of his issues with Defendant and that he could not trust them. Indeed, the staff had denied a nurse's request to x-ray Plaintiff's swollen ankle, and the time in the MRA cell essentially punished Plaintiff for not returning to general population.

Plaintiff explained that the several months in MRA cell was depressing, stressful, and destroyed him emotionally. Despite this, Plaintiff's fear of Defendant was so great that he chose to stay in segregation and the MRA cell to avoid further exposure to Defendant. Moreover, Plaintiff's testimony about his weekly mental health services and ultimate hunger strike support the extent of his mental suffering. Even at the hearing, Plaintiff struggled to talk about the incident with Defendant and appeared visibly shaken and disturbed by having to relive the events that occurred over three years prior.

The Court finds that Plaintiff has suffered real emotional and physical injuries from the Defendant's use of excessive force against him, an inmate in a truly helpless position. In conjunction with the presentation of evidence and testimony that supports Plaintiff's injuries, the fact that Plaintiff is a prisoner should not discount his pain and suffering that resulted from Defendant's misconduct. Thus, the Court finds sufficient evidence and an appropriate basis to award Plaintiff the total damages he requested at the hearing—$250,000 in compensatory damages.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Default Judgment (Doc. 26) is **granted.** The Court enters default judgment against Defendant Marshall Manning in the amount of $250,000.

**IT IS SO ORDERED.**

Dated: December 7, 2018

                                                  S/ Julie A. Robinson
                                                  JULIE A. ROBINSON
                                                  CHIEF UNITED STATES DISTRICT JUDGE